I need one of those podiums that go up and down. Commissioner Backman? It is, Your Honor, yes. Good to have you with us. It's a pleasure to be here. You're representing USHealth Advisors? Yes, Your Honor. Good morning. It may have pleased the Court. My name is Jeffrey Backman, and with me is Roy Taub, and we represent the appellant, USHealth Advisors, LLC, in this appeal. We're excited to be here. I've reserved five minutes for rebuttal. The District Court denied USHealth's motion to compel arbitration and refused to enforce the delegation clause because it believed that this Court's holdings in Rogers and Assyrnia categorically preclude any non-signatory from ever enforcing a delegation clause. This was error for two primary reasons. First— So you want us to order arbitration? I do, yes. First, it is contrary to the Federal Arbitration Act and Supreme Court precedent. Since Ms. Sessoms doesn't dispute either the existence of the arbitration agreement or the validity of her clear and unmistakable agreement to delegate— The question in this case arises because this is a third party. That's correct. And the third party, generally, particularly—clearly, it was an incidental third party—is just not a party to the contract. And the question is, I think, the controlling law, it seems to me, that we all agree, is—I guess it's Delaware law? Not Delaware law. It's Delaware, yes, Your Honor. Delaware law on this. And so, if you're saying the judge here made an error, you are saying he erred in terms of how he applied Delaware law to this. Is that correct? That is one error, but that is not the primary error that we're focusing on. One, we don't believe that we're incidental. We believe that we're intended, and we believe it was error for the court to find that we were not an intended third party beneficiary. So, to be clear in terms of the factual thing here, because I found this to be rather intriguing, when you think about how you sign these contracts, this is a contract in which it seems like next gen is like a clearinghouse type agency. Sort of—  Get people to, you know, submit— To lead generate. And then part of it is this agreement that when you access it, you say, okay, you consent to certain things, and one of it is to arbitrate claims that come out of it. And I'm thinking, and I'm maybe getting ahead of it, but let's delve into the issue here, the whole question of beneficiary materiality, the whole bit that's there. But even with that, maybe for the contract, but I'm wondering if you just look at the provision to arbitrate, was that an intended benefit for the third party, or was next gen more interested in how things would come against it? You see where I'm going with that? I do, Your Honor. And, you know, it's a difference of whether you look at this holistically, which it seems to me, it does kind of favor your position when you look at it holistically, but if you look specifically at the arbitration clause itself, it says, why is that in there? It's a procedural way in which you go, and was there any benefit to say, I want this, and then for everybody else that comes along who's not a part of this, they get this benefit, when I could very well see next gen in that instance is protecting its interests. Sure, so, a lot to unpack there. First... It's pretty straight up. First, I want to make sure, I don't want to unpack a whole lot of stuff here. So that's why I said, I want you to answer that question, because I think it's dealing with the arbitration clause. I mean, if we start unpacking, you're going to get me into this whole thing, which I'm telling you, I think is pretty good, but when you deal with that arbitration clause, it becomes less clear to me that that's the benefit. So Delaware law does not allow us to ignore the entire relationship and all of the facts and circumstances, which include all of the things that perhaps are more favorable to us, right? We certainly agree with the notion that we are an intended beneficiary of the entire relationship that was created by Ms. Sessoms going online, filling out this form, consenting to be contacted by our client, a group of marketing partners, including our client, to receive the quotes that she was asking for. As to the arbitration agreement itself, however, what we have to look at is, one, the agreement, which is very broadly worded. It is not limited to claims only between NextGen and Ms. Sessoms, and it requires her to arbitrate, including the arbitrability question, which I hope to get back to, her use of the website, claims arising from her use of the website, claims arising from the consents that she provided, claims arising relating to the information, products, or services of third parties. This relationship between Sessoms and U.S. Health Advisors does not exist without U.S. Health Advisors. It only exists if the marketing partners are here. As you said, Judge Wynn, you looked at this like a clearinghouse. NextGen makes money how? It sells TCPA-compliant leads subject to binding arbitration to third parties like my client. What did Ms. Sessoms want when she went online? Ms. Sessoms wanted to receive insurance quotes. She went on the website seven times. And I know this is the merits, but you just said she wanted to receive insurance quotes, and she got insurance quotes, and now she's complaining about it. That's correct. I mean, that's what she wanted. Exactly. I agree that the merits are silly here. She consented. She does not dispute that. She has not disputed that at all throughout these proceedings. I believe in the court's order, the district court's order, there was a finding that she had agreed to arbitrate. She does not contest the arbitration agreement. She doesn't contest that the delegation by incorporation of the AAA rules is clear and unmistakable evidence of delegation. The arbitration agreement is written extremely broadly, specifically referenced third parties, relates to the use of the website, relates to the consent that she provided, and this claim arises from her opting in on that website and agreeing to the terms and conditions, which my friends do not dispute include this valid arbitration agreement. I do want to get back to the delegation issue, however, because before the court can get to a third-party beneficiary, our district court had to conclude that in the face of this clear and unmistakable delegation provision, he was permitted to resolve the question of arbitrability. We say he was not. We say that this court's decision— You think the arbitrator should be able to resolve whether something belongs in arbitration. That's correct, Your Honor. This is a question of enforcement. Where does the Federal Arbitration Act say that? So Section 2, Section 3, Section 4 all discuss generally an agreement to arbitrate. It just makes sense for the district court to determine does this belong here or there, and why does it matter to you? You're not saying you need that point to win this case, do you? I don't need that point to win this case if we win on the third-party beneficiary. Not even as strong as the other points. I mean, it seems like we could spend some time talking about that, but I don't know where you're going with that one. I mean, the Federal Arbitration Act pretty much tells you right at the beginning to make a determination of where you belong is really a federal district court issue. And then once it said arbitration, then it goes into the whole—all the rest of the issues there. But the initial—it just doesn't make sense to me that the arbitrator would get to determine whether this belonged here or there, because if he said it didn't belong here, what is he going to do with it? So you'd be correct, Your Honor, if this were just an arbitration agreement without a delegation clause. What the law says, what the Supreme Court has said—Arthur Anderson, Rennes Center, Henry Schein a few years back— what the Supreme Court has said repeatedly is that, one, non-signatories can enforce an arbitration agreement under the FAA. Don't you also have to get beyond our opinion in Rogers? Well, it's not every day I get to stand before a panel and say, hey, I think you got it wrong in Rogers, right, in a case before the courtship. And you think that a panel—even if we got it wrong, you think a panel of this court can overturn precedent? I don't know why a panel of this court cannot find that— That's a swim you don't want to take. You might want to—I'm telling you, I'm going away with that one. It's not the easiest position to be in, but we believe— It's an impossible position. We're not going to overrule another panel. Judge King was on the panel, so I understand. It doesn't matter. It could have been another panel altogether. We're not going to overrule a panel of this court. It's not going to happen. That's fine. Then, look, we believe— So you have to distinguish it somehow, can you? I can distinguish it, but first, let me just get out that we believe that the FAA and the Supreme Court preclude a finding like what the district court made, that there is a categorical prohibition on non-signatories enforcing delegation provisions. That's one. Moving past that, if we look at Rogers, Rogers has to be construed and interpreted based upon the underlying arbitration agreement that was at issue in that case. In that case, it was clear and unambiguous that the dispute to be arbitrated was only between those parties. And what the court said— It looks a lot like the arbitration agreement here. It looks nothing like the arbitration, with all due respect. Well, I'm reading it, and go ahead. And what parts are not like it? Well, this sounds a lot like it if you look at the language it says. It is a court, not an arbitrator, that must initially decide whether a non-party to an arbitration agreement is entitled to enforce it. Except Henry Schein says the very next sentence to that. But if there is a valid delegation provision, then the court is powerless to resolve the arbitrability question. Just as in AT&T Technologies 40 years ago, the court said if the issue is arbitrated, the court cannot resolve the merits of it. It has to let the arbitrator resolve that. Henry Schein says, just like the principles espoused in AT&T Technologies, if the parties to the contract— So you're going back to saying Rogers is wrong? Well, I was just responding to Judge Winston's question. But if the question— I still don't know why you're spending time on this issue. If the question of arbitrability has been delegated, then the court is powerless to resolve it. But in Tug Hill, what's important—this is from Tug Hill— when the delegation provision is read in the context of the arbitration clause as a whole, it is plain that Rogers agreed to arbitrate issues, including threshold issues, arising—and it's emphasized—between him and Riga. That's the third part, the original party to the agreement. In your opinion, the threshold issue is what? Arbitrability. Whether or not a non-signatory can enforce the agreement has been delegated to the arbitrator. Whether this non-party can even come in and enforce not just the arbitration clause but the contract. No, the delegation provision, which is in the arbitration agreement— so the delegation provision is a separate agreement recognized under the FAA and the Supreme Court precedent as having the same rights, equal footing to the larger arbitration agreement within which the delegation provision lies. So there's two agreements here in this arbitration agreement. There's, hey, we're going to resolve the merits to arbitrate, but we're also going to delegate the question of arbitrability to allow the arbitrator to resolve scope, validity, enforcement. This is an enforcement question. Who is we? The parties to the underlying agreement for which we are seeking rights. So third-partiness in this case is part of this agreement. We are a third-party beneficiary to the agreement. I'm not taking any other position. You say that, but that is a question that has to be addressed under Delaware law. Are you a beneficiary of an agreement? You jumped there, and I agree you could jump there, but that's a step beyond where you first have to get, is you've got to determine whether, first of all, the Delaware law permits that as a beneficiary. Then there's the question of materiality and the whole, that comes up too. And so to jump down the road on this, it says we are, and therefore we have to enforce it. Those things have to be made as an initial matter. I think the Federal Arbitration Act intended for these initial questions to go to federal district court. Delegation clause notwithstanding, but tell me a case that holds exactly what you've just been saying. Henry Schott says that, and when you look at Arthur Anderson, it says it was the same issue raised by a party saying that a non-signatory cannot enforce an arbitration agreement. It did not involve delegation. What Justice Scalia said in Arthur Anderson was non-signatories do have rights under Section 3 to seek before this court a stay. Non-signatories can enforce a valid agreement to arbitrate under the FAA. I'm going to observe where you're going with this, but I think that the differences we're making, at least I have on this, is what is the threshold issue? And the issue here, in my opinion, is whether a third party can even enforce the rights of a contract. That's not about arbitrability. It's about a third party standing to do contract. So it's sort of like you jump down the road on it. But in the general world out here, when you have a contract and then you have a third party, the general rule is third party can't enforce it. So you have, but under Delaware law, there are ways in which you can get there. That's the beneficiary, the interest, the whole materiality part of it. The arbitrability question asks who decides that. And where the agreement contains a delegation clause, the answer is that the arbitrator decides the third party beneficiary issue. We are not arguing that we just win on it. We're saying the question, because of the delegation provision- Even though we don't know in the first instance whether this party can even enforce this arbitration. It's for the arbitrator to decide. That's what a delegation provision is. He can't even enforce it. So you can go to arbitration without there being a question of who can he enforce this contract. That is the question that the arbitrator gets the answer because of the delegation clause. So back to Tug Hill. I see my time is up. I have five minutes for Obama. Thank you. Thank you very much. Mr. Phillips. I made a mess, Jacob. Thank you, Your Honor. Jacob Phillips. May it please the Court. To Judge Witton's point, their entire argument is an exercise in question begging. The issue before the Court is whether defendants has standing to enforce contractual rights to delegate the question of arbitrability to an arbitrator. Defendants' position is that the arbitrator decides that very question. In other words, they're assuming the point that they're trying to make. This Court and Rogers specifically said, and I had the quote that Judge Witton already gave, which is that it is a court, not an arbitrator, that must initially decide whether a non-party to an arbitration agreement can enforce arbitration. So that's the threshold issue in the case. Can the Court decide it? Once you say, okay, the Court can decide it, it seems to me that does not end this case. Then you determine the next issue that follows. The error in denying this motion to arbitrate. The initial question, which the opponent spent a lot of time on, and maybe well spent, I'll go ahead and restudy it in terms of where he went with that on that. This delegation business. But that's not the end of the inquiry. Once you say, okay, Judge, you can, in District Court, decide whether or not this is an arbitration question or not. Then the question is, was it error to deny the motion to arbitrate? Or conclude it as a trial? That's correct, Your Honor. The District Court correctly decided that it was the one who had to decide whether the claim was subject to arbitration. And then it correctly decided that this claim is not subject to arbitration. The reason is the text of the contract itself. The text of the contract itself says that this agreement provides that all disputes between you, meaning plaintiff, and us, meaning next gen, will be resolved by binding arbitration. It does not say that any claim between you and third parties will be decided by binding arbitration. Then the text of the arbitration clause itself refers to you and we, meaning plaintiff and next gen, nothing about third parties. And the reference to products or services of third parties states, refers to next gen's liability relating to products or services of third parties. In other words, it references products or services of third parties, but it's referring to claims that next gen is liable for the products and services of third parties. So if a plaintiff was suing next gen and saying, hey, you're vicariously liable for something your marketing partner did, then next gen would be able to compel that claim to arbitration. What it does not say is that the third parties themselves have standing to enforce an arbitration clause that is between next gen and plaintiff. And the district court correctly found that based on that, that there was, at the very least, there was no material benefit intended for defendants to be able to invoke the arbitration clause that exists between next gen and plaintiff. And so we would say that not... But just that part of the clause, that part of the clause does address the third parties and the consensus that's been provided with information of products of third parties. How does that impact here? It says all claims related. All claims against next gen. So what it says is you and we agree that all claims, disputes, and controversies, which you may contend next gen or its affiliates, members, officers, or directors is liable relating to the information products or services of third parties. So it's still referring... It talks about third parties, but it's referring to next gen's liability relating to the products and services of third parties, which is what I was referencing before and saying that if plaintiff had brought a claim against next gen and said next gen, you're liable for defendants' products or services, then next gen could properly invoke the arbitration clause. But that does not mean that the third parties themselves can invoke an arbitration clause. The contract is between next gen and plaintiff. The contract is not between plaintiff and defendant. So a way of thinking about it... The Fifth Circuit actually said this in one of their cases. A way of thinking about it is could defendant sue plaintiff or next gen for breaching this contract? One or the other, not the arbitration clause maybe itself, but any other part of the contract. Could defendant come in and say, hey, you didn't do what you told plaintiff you were going to do next gen. We're going to sue you because we have a third-party beneficiary standing under this contract. Of course not. Of course they couldn't because they don't have contractual rights under this contract as a third-party beneficiary. And because they have no standing to sue for breach of contract, they also have no standing to invoke an arbitration clause. Delaware law is properly cynical about parties coming in and saying, hey, we have no obligations under a contract, but we want to enforce it anyway. Delaware law says, well, maybe, but you've got to give a strict proof that you were an intended beneficiary of this contract and nothing in the terms of services indicate that they are. The fact that they incidentally benefit from it, the fact that they're going to be provided the data that plaintiff gave to next gen so that they could try to solicit quotes or whatever, has no bearing under Delaware law because you have to prove that it was a material part of the contract. And it's their burden under the standard of proof to do so. The district court correctly found that they failed to meet their burden. Unless the court has specific questions, the only other point that I would make is that they say, at the very least, this should be set back down for a trial on the question. I would merely point out that, hey, they didn't ask for a trial by jury. They sort of relied on the district court to be the fact finder. The district court was provided the affidavit that they rely on. The district court didn't say, I don't believe you. I don't find you credible, CEO. But the district court, as he looked at the affidavit and said, based on the evidence that he was provided, that they didn't meet their burden of proving by preponderance of evidence under the motion, under the summary judgment, like standard that applies here. And so we would say that there is no reason to send it back down for a trial. I have a lot of remaining time, but I'm happy to give it back to the court unless the court has specific questions. Thank you, Your Honor. We would just ask that the order and appeal be affirmed. Thank you very much. Thank you. Mr. Backman. Yes, Your Honor. And I have a lot of extra time. Never hurts to ask, I guess. Just real quick, Judge Thacker. So we were talking about the arbitration agreement in Rogers as compared to ours. A couple of things to point out from Rogers. There was language in the agreement that expressly says, RIGA will not be a party to disputes or negotiations of disputes between you and the companies. And then the arbitration agreement itself specifically says, in the interest of resolving disputes between you and RIGA, our agreement does not contain any limiting language to only disputes that arise between Ms. Sessoms and NextGen. Except for where it says, you and we agree. Are you you or are you we? Or are you neither? We are neither. And I don't take a different position, but it doesn't say you and we agree that disputes between us or only between us. It's simply saying we are the parties to this written document. You agree to all of these things and we agree to all of these things. And so if the consent is one of those disputes of which claims arise and will be subject to arbitration, you agree to that. If it's the use of the website, you agree to that. If it's the information products or services of third parties, you agree to that. And I was reading from Tug Hill before in terms of the courts. Where do you see that? If it's the information products or services of third parties, you agree to arbitrate with the third parties. Yes, Your Honor. As opposed to with we, you and we. Sure. So I think the interpretation is you and we agree. So for purposes of Miss Sessoms, we can take out the end. We, you agree that all claims, disputes, or controversies arising out of or relating to your use of this website, to the services provided by next gen, any consent you have provided to us or to any acts or omissions for which you contend next gen or its affiliates, members, offices, or directors is liable relating thereto, or to the information products or services of third parties, shall be finally and exclusively settled by binding arbitration. Right. As between you and we. You have to start at the beginning with the you and we. But there's no between. Okay. Because it doesn't have the, your argument is because it doesn't have the word between in the same way that, um, whatever that other case was. Yes. I think that would narrow it. Okay. I understand your argument. Thank you, Your Honor. Uh, and, and in, in the Rogers case, the court after discussing how that arbitration agreement is between him and Riga, the court says, but he did not enter into any agreement that allows an arbitrator to decide whether a third party like Tug Hill has rights under the arbitration agreement. We submit to you that this arbitration agreement and all of the facts and circumstances demonstrate that this is more broad, that it is not limited. And even the court, the district court said, USH, US health advisors correctly argues that it was an intended third party beneficiary of the agreement. So even the court acknowledges the broader scope here. And I think it's important going back judge went to your question about third party beneficiary. We are. At the very least a material purpose to the agreement. I. That's kind of the big issue. And when you look at what the district court did, I mean, I think the district court did say, uh, recognize that the third party was some type of a beneficiary, but Delaware law didn't sense out. There are three different types of beneficiaries. Of course, incidental will be not going. You could deal with, but certainly the don't eat of a beneficiary accredited could be, but the question that seems like to me, the pivotal question is the question of whether there was an intent to benefit this third party, which is what you've gotten at. Here's what the district court replied and how it hailed on it. This court said next gen would have contracted with sessions, even if it could not include the benefit to us. That sounds like, but for that. And the question I'm at, if, if it's a question here, I don't know if it's something we can resolve here, but I don't think that's supported on the Delaware law, the, but for analysis, but I don't think, I don't know if we resolved that here. How does that deal? How do we deal with it? We do. We, you resolve it, you send it back to him and tell him he misapplied the law because that is not the third element. I wrote the same thing down. This is a, but for cause causation standard that he created. The question is not whether or not these parties would have made a deal with or without the third party. The question under Delaware to Delaware law. That's correct. Your Honor. The question on the third, are you asking us to send it back so he can apply the law? I think as it should be not in a, but for, I see my time's up, but I'd like to answer this question. I believe that this is a DeNova review. And you could conclude that not only did he get the law wrong, but he misapplied the facts using the correct law. It is not whether it was the material purpose. It's whether it was a material determination of whether, but for is the law in the case, but in terms of the factual application of it to the proper standard, there's a district court function. I, I contend that you can reverse it and you can make the conclusion that under this record, we can do that and have done such a thing there, but that's not the way we normally operate. You're right. This court can do a lot of stuff and no one's going to, going to challenge it, but that's not the way I tried earlier. Cause we don't want to take the district court job away from him. First of all, we're not going to create that much. We start doing this in every case when we find it as another standard. And we find ourselves conducting a mini trial up here. That's not going to happen. This is an appellate court. And the district court is very capable of doing this on analysis of it. But my question on that is, is that a remand given? If we were to rely on that basis there, that this is not, but for, that it really is a different standard, but that he should apply it and the court should apply it could still come against you, I guess. I don't know if you use a different standard, but he has to do the right step. Agreed. Yes, Your Honor. All right. Agreed. I see my time's up. Thank you very much. It was a pleasure. Thank you. Appreciate counsel arguments. And we'll come down and greet counsel as we do. And then we will take a brief break. Thank you.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker